UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| LACY McKENZIE, ) | Civil Action No.: 4:05-3512-TLW-TER |
| ) | |
| Plaintiff, ) | |
| ) | |
| -vs- ) | **REPORT AND RECOMMENDATION** |
| ) | |
| ) | |
| DEPUTY J.D. OUTLAW, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

## I.     INTRODUCTION

Plaintiff brings this action pursuant to 42 U.S.C. § 1983, alleging that he was arrested without probable cause in violation of his Fourth Amendment right to be free from unreasonable seizures. Plaintiff also asserts state law causes of action for false arrest, battery and malicious prosecution. At the time the Complaint was filed, Plaintiff was represented by counsel. However, on May 2, 2007, the undersigned granted Plaintiff's counsel's previously filed motion to withdraw as counsel. Plaintiff was given seventy days from the date of the Order to retain new counsel. Plaintiff has not retained new counsel and is now proceeding in the action pro se.

On September 14, 2007, Defendant filed the present Motion for Summary Judgment (Document # 48). Because Plaintiff is proceeding pro se, he was advised on September 17, 2007, pursuant to Roseboro v. Garrison, 528 F.3d 309 (4th Cir. 1975), that a failure to respond to Defendant's Motion could result in dismissal of his Complaint. Plaintiff's Response to Defendant's Motion was due October 22, 2007. On October 12, 2007, Plaintiff submitted a document that the Clerk of Court filed as a Response in Opposition to Defendant's Motion for Summary Judgment

(Document # 53). However, the document submitted by Plaintiff is not responsive to the facts presented or the arguments raised in Defendant's Motion.

All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(e),DSC. Because Defendant's Motion is dispositive, this Report and Recommendation is entered for review by the District Judge.

## I.    FACTUAL ALLEGATIONS

Plaintiff sets forth the following allegations in his Complaint:

5. That on or about the 2nd day of July, 2005, the Plaintiff was on his property when he observed a lot of deputies. He was told he was on a crime scene, and told to leave, which he did. Plaintiff then went to his nephew's home. Plaintiff then returned to his property to inquire about his nephews, whose trucks he had seen there. He was told everyone there had been arrested. After some further discussion with some deputies Plaintiff again returned to his nephew's home.

6. Defendant approached the Plaintiff's vehicle where the Plaintiff was sitting. Defendant stuck his pistol in the Plaintiff's face, and told the Plaintiff to get out with his hands up. Whereupon,. [sic] Defendant grabbed the Plaintiff's left arm and flipped him on the ground. Plaintiff is 71 years of age. Defendant twisted the Plaintiff's arm and placed his knee in the Plaintiff's groin. The force used by the Defendant was so excessive[1] that the Plaintiff's arm was dislocated and broken and he is suffered other permanent injuries and disabilities.

7. Defendant then told the Plaintiff to get up, when the Plaintiff was unable to do so, Defendant grabbed the Plaintiff's right arm, picked him up, and placed Plaintiff in a patrol car, which transported him to the Chesterfield County Detention Center. Plaintiff was given a ticket by Defendant, charging him with disorderly conduct.

8. The Defendant then caused the Plaintiff to appear and be tried on the charge disorderly conduct on July 3, 2005. Plaintiff was found not guilty.

Complaint, ¶¶ 5-8. The facts presented by Defendant in his Motion are undisputed and therefore,

---

[1] Despite this factual allegation, Plaintiff does not assert a cause of action for excessive use of force.

are set forth herein verbatim:

> On July 2, 2005, the Defendant, J.D. Outlaw, a Deputy Sheriff with Chesterfield County, was dispatched to the area of 2249 McKenzie Road, McBee, South Carolina in reference to someone threatening tow truck drivers who were at the scene of what is commonly referred to as a "cock fighting bust." See, Outlaw Affidavit, para. 2. Upon arrival at the scene, Deputy Outlaw observed the Plaintiff on McKenzie road and he appeared to [sic] arguing with a tow truck driver. See, Outlaw Affidavit, para. 3.
>
> The tow truck driver, Randall Johnson, had seen the Plaintiff earlier at the scene of the cock fighting activity and heard a law enforcement officer tell him to leave the scene and indicate that Mr. McKenzie had been told to leave the scene before that. See, Johnson Affidavit, para. 3. Just before Deputy Outlaw arrived, the Plaintiff had pulled up beside Mr. Johnson's tow truck and asked if he could deliver the truck he was towing to the owner's house. Mr. Johnson responded that he could take the truck to the owner's house but it was policy to take the truck back to his shop. See, Johnson Affidavit, para. 4. Shortly after that conversation, Deputy Outlaw arrived at the scene, activated his blue lights, exited his patrol car and verbally advised the Plaintiff that he was conducting a traffic stop and that the Plaintiff needed to pull over. See, Outlaw Affidavit, para. 3 and Johnson Affidavit, para. 4. In response, Mr. McKenzie fled in his vehicle at a high rate of speed. See, Outlaw Affidavit, para. 3 and Johnson Affidavit, para. 4.
>
> With his blue lights still activated, Deputy Outlaw pursued the Plaintiff's vehicle for about 100 yards on McKenzie Road, during which time he had radio contact with another Sheriff's Deputy, Jimmy Coombes. See, Outlaw Affidavit, para. 3 and Coombes Affidavit, para. 2. Deputy Outlaw followed the Plaintiff into a driveway where the Plaintiff stopped behind a single wide mobile home and Deputy Outlaw stopped, with blue lights still activated, within approximately one and one-half to two car lengths behind the Plaintiff's car and exited his patrol car. Deputy Outlaw began approaching Mr. McKenzie's vehicle from behind, at which time, the Plaintiff put his car in reverse and started backing towards Deputy Outlaw. Deputy Outlaw had to jump out of the way in order to avoid being struck by the Plaintiff's vehicle. In response, Deputy Outlaw drew his service pistol and advised the Plaintiff to stop. See, Outlaw Affidavit, para. 3.
>
> At about this same time, Deputy Coombes arrived at the scene, exited his patrol car with a rifle and went around to the front of the Plaintiff's car. During this time, the Plaintiff was reaching between the seats of his car and into the floorboard, and both Deputy Outlaw and Deputy Coombes were telling him to put his hands up. See, Outlaw Affidavit, para. 3 and Coombes Affidavit, para. 3.

>After being told several times, the Plaintiff finally did raise his hands. Deputy Outlaw holstered his pistol, opened the driver's side door and removed the Plaintiff from his car using a technique known as a "straight arm bar take down" and placed the Plaintiff on the ground. See, Outlaw Affidavit, para. 3 and Coombes Affidavit, para. 3. During this time, Deputy Coombes had swept around the open car door such that he had Deputy Outlaw and the Plaintiff in his view. See, Coombes Affidavit, para. 3. Deputy Outlaw placed handcuffs on the Plaintiff, conducted a quick search of the Plaintiff's vehicle and then placed the Plaintiff in his patrol car. See, Outlaw Affidavit, para. 3 and Coombes Affidavit, para. 3.
>
>Deputy Outlaw then transported the Plaintiff to the Chesterfield County Detention Center which was approximately a thirty minute ride from the scene. See, Outlaw Affidavit, para. 4. During the trip to the Detention Center, the Plaintiff continuously complained, cursed and generally acted belligerent. However, at no time did the Plaintiff complain to Deputy Outlaw about any injuries or make any requests for medical care. See, Outlaw Affidavit, para. 4. Deputy Outlaw escorted the Plaintiff into the booking area of the Detention Center where a Detention Center Officer conducted a search of the Plaintiff. Deputy Outlaw wrote a ticket to the Plaintiff for public disorderly conduct and transferred that ticket to Detention Center staff for booking. See, Outlaw Affidavit, para. 4. The disorderly conduct was later dismissed by a local magistrate. See, Outlaw Affidavit, para. 5.
>
>The Plaintiff was booked into the Detention Center by Officer Inez Cassidy and was loud and boisterous during this process. See, Cassidy Affidavit, para. 2. Officer Cassidy completed a Booking Report and Inmate Medical Screening Form, and the Plaintiff responded negatively to all questions regarding any health problems or injuries, and told Officer Cassidy that there was nothing wrong with him. Also, Officer Cassidy did not observe any physical injuries to the Plaintiff. See, Cassidy Affidavit, para. 2. The Plaintiff was at the Detention Center for less than thirty minutes and was permitted to sit on a bench in the booking area rather than being taken to a cell. He was released from the Detention Center upon being granted a personal recognizance bond. See, Cassidy Affidavit, para. 3.

Defendant's Memorandum in Support of Motion for Summary Judgment (Document # 48) at 1-4.[2]

## III.   STANDARD OF REVIEW

The moving party bears the burden of showing that summary judgment is proper. Summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to

---

[2] The affidavits cited herein are all attached as exhibits to Defendant's Motion.

judgment as a matter of law.  Rule 56(c), FRCP; Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Summary judgment is proper if the non-moving party fails to establish an essential element of any cause of action upon which the non-moving party has the burden of proof.  Celotex, 477 U.S. 317. Once the moving party has brought into question whether there is a genuine issue for trial on a material element of the non-moving party's claims, the non-moving party bears the burden of coming forward with specific facts which show a genuine issue for trial.  Fed.R.Civ.P. 56(e); Matsushita Electrical Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986).  The non-moving party must come forward with enough evidence, beyond a mere scintilla, upon which the fact finder could reasonably find for it.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).  The facts and inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party.  Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991).  However, the non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment.  Barber v. Hosp. Corp. of Am., 977 F.2d 874-75 (4th Cir. 1992).  The evidence relied on must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." Mitchell v. Data General Corp., 12 F.3d 1310, 1316 (4th Cir. 1993).

Rule 56(e) provides, "when a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." See also Celotex, 477 U.S. at 324 (Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves").  To raise a genuine issue of material fact, a party may not rest upon the mere

allegations or denials of his pleadings. Rather, the party must present evidence supporting his or her position through "depositions, answers to interrogatories, and admissions on file, together with ... affidavits, if any." Id. at 322. See also Cray Communications, Inc. v. Novatel Computer Systems, Inc., 33 F.3d 390 (4th Cir. 1994); Orsi v. Kickwood, 999 F.2d 86 (4th Cir. 1993); Local Rules 7.04, 7.05, D.S.C.

**IV.     DISCUSSION**

    A.     Probable Cause

Defendant asserts that summary judgment is proper because probable cause existed for Plaintiff's arrest. Under the Fourth Amendment, an arrest is reasonable only if based upon probable cause. Rogers v. Pendleton, 249 F.3d 279, 290 (2001). "Probable cause is 'defined in terms of facts and circumstances sufficient to warrant a prudent man in believing that the [suspect] had committed an offense.'" Id. To determine whether or not probable cause existed, we must examine the "totality of the circumstances" known to the officers at the time of arrest. United States v. Al-Talib, 55 F.3d 923, 931 (4th Cir.1995). The determination and existence of probable cause is a "practical, nontechnical conception," and it involves "factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." Brinegar v. United States, 338 U.S. 160, 175-76, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949). Probable cause will be found when "the facts and circumstances within an officer's knowledge–or of which he possesses reasonably trustworthy information–are sufficient in themselves to convince a person of reasonable caution that an offense has been or is being committed." Wadkins v. Arnold, 214 F.3d 535, 539 (4th Cir.2000). "Whether probable cause exists in a particular situation ... always turns on two factors in combination: the suspect's conduct as known to the officer, and the contours of the offense thought to be committed

by that conduct." Rogers, 249 F.3d at 290. "Probable cause therefore could be lacking in a given case, and an arrestee's right violated, either because of an arresting officer's insufficient factual knowledge, or legal misunderstanding, or both." Id. Probable cause demands more than a mere suspicion, but less than evidence sufficient to convict. Taylor v. Waters, 81 F.3d 429, 433 (4th Cir.1996). Our inquiry should be made based on the information possessed by the officer at the time of the arrest, that was then reasonably available to him at the time of arrest, and in light of any exigencies of time and circumstance that reasonably may have affected the officer's perceptions. Pritchett v. Alford, 973 F.2d 307, 312 (1992).

      Based on the facts as set forth above and the affidavits submitted, the undersigned finds that Defendant had probable cause to arrest Plaintiff. There are sufficient facts and circumstances to warrant a prudent person to believe Plaintiff had committed or was committing a crime. As noted by Defendant, S.C. Code Ann. § 16-17-530 provides in part "[a]ny person who shall (a) be found on any highway or any public place or public gathering in a grossly intoxicated condition or otherwise conducting himself in a disorderly or boisterous manner, [or] (b) use obscene or profane language on any highway or any public place or gathering . . . shall be deemed guilty of a misdemeanor . . . ." Furthermore, S.C. Code Ann. § 56-5-750(A), makes it unlawful for a driver to of a motor vehicle to fail to stop when signaled by a law enforcement vehicle by means of a siren or flashing light. The probable cause inquiry is based upon whether the facts known by the arresting officer at the time of the arrest objectively provided probable cause to arrest. Devenpeck v. Alford, 543 U.S. 146 (2004). The Devenpeck Court explained that "the subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause." Id. at 153. The Court, in fact, held that the offense establishing probable cause to arrest need not even be

"closely related to" the offense on which the criminal defendant was charged. Id. at 153-54.

Accordingly, in a false arrest case, courts should "focus on the validity of the arrest, and not on the validity of each charge." Jaegly v. Couch, 439 F.3d 149, 153 (2d Cir. 2006). "A claim for false arrest turns only on whether probable cause existed to arrest a defendant, and . . . it is not relevant whether probable cause existed with respect to each individual charge, or, indeed, any charge actually invoked by the arresting officer at the time of arrest." Id.

Defendant received a call that someone was threatening tow truck drivers, upon Defendant's arrival on the scene, Plaintiff appeared to be arguing with a tow truck driver, Plaintiff fled the scene in his truck when Defendant activated his blue lights and told Plaintiff to pull over, and Plaintiff attempted to strike Defendant with his vehicle. Thus, probable cause existed for both the disorderly conduct charge as well as for failure to stop for a blue light even though Defendant did not charge Plaintiff with such an offense. Accordingly, summary judgment is proper.

B.     Qualified Immunity

Defendant also argues that, even if the Court finds that probable cause did not exist for Plaintiff's arrest, he is nonetheless entitled to qualified immunity.

The Supreme Court in Harlow v. Fitzgerald, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), established the standard which the court is to follow in determining whether the defendant is protected by qualified immunity. That decision held that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Harlow, 457 U.S. at 818.

> In a discussion of qualified immunity, the Court of Appeals for the Fourth Circuit stated:
>
> Qualified immunity shields a governmental official from liability for civil monetary damages if the officer's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. In determining whether the specific right allegedly violated was 'clearly established,' the proper focus is not upon the right at its most general of abstract level, but at the level of its application to the specific conduct being challenged. Moreover, the manner in which this [clearly established] right applies to the actions of the official must also be apparent. As such, if there is a "legitimate question" as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity.

Wiley v. Doory, 14 F.3d 993 (4th Cir.1994) (internal citations omitted), cert. denied, 516 U.S. 824, 116 S.Ct. 89, 133 L.Ed.2d 45 (1985).

In Torchinsky v. Siwinski, 942 F.2d 257 (4th Cir.1991), the Fourth Circuit explained the rationale for Harlow qualified immunity:

> The grant of qualified immunity to government officials ensures that these officials can perform their duties free from the specter of endless and debilitating lawsuits. Without such immunity, the operations of government would be immobilized. Permitting damages suits against government officials can entail substantial social costs, including the risk that fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties.

Torchinsky, 942 F.2d at 260-261 (citations omitted).

The Torchinsky court further noted that "a particularly appropriate procedure for determining an official's entitlement to qualified immunity is summary judgment." Id. at 261. The court held that an official's entitlement to qualified immunity is based upon an "objective reasonableness" standard. Id. "The very idea of reasonableness requires that courts accord interpretive latitude to officials judgments." Id. (citing Sevigny v. Dicksey, 846 F.2d 953 (4th Cir.1988)). Therefore, a plaintiff may prove that his rights have been violated, but the official is still entitled to qualified immunity if a reasonable person in the "official's position could have failed to appreciate that his conduct would

violate" those rights. Id. (citing Collinson v. Gott, 895 F.2d 994 (4th Cir.1990)). As the Fourth Circuit explained in the case of Swanson v. Powers, 937 F.2d 965, 967 (4th Cir.1991), "[o]nly violations of those federal rights clearly recognized in existing case law will support an award in damages under 42 U.S.C. § 1983." Therefore, if a particular action by a state agency is deemed unconstitutional, the defendant is entitled to qualified immunity unless there is clearly established case law demonstrating that the alleged conduct is violative of the Constitution.

In Maciariello v. Sumner, 973 F.2d 295 (4th Cir.1992), the Fourth Circuit Court of Appeals further explained the theory of qualified immunity when it set forth that:

> Governmental officials performing discretionary functions are shielded from liability for money damages so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Moreover, there are two levels at which the immunity shield operates. First, the particular right must be clearly established in the law. Second, the manner in which this right applies to the actions of the official must also be apparent. Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines.

Id. at 298 (citations omitted).

For a plaintiff to recover, he must show the defendant (i) violated a particular right clearly established in law, and (ii) the application of that right to the actions of the official must be apparent. The plaintiff in this case has not done so. The undersigned cannot conclude that the defendants in this case transgressed bright lines. "Officials are not liable for bad guesses in gray areas." Id. Therefore, summary judgment is also appropriate on the basis of qualified immunity.

    C.    State Law Causes of Action

If the district judge accepts this Report and Recommendation, then the original federal jurisdiction claims will be dismissed. Title 28 U.S.C. § 1367(c)(3) provides, in pertinent part, "[t]he district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district

court has dismissed all claims over which it has original jurisdiction . . . ." The Fourth Circuit has recognized that "trial courts enjoy wide latitude in determining whether or not to retain jurisdiction over state claims when all federal claims have been extinguished." Shanaghan v. Cahill, 58 F.3d 106, 110 (4th Cir.1995) (holding district court did not abuse its discretion in declining to retain jurisdiction over the state law claims). See also, e.g., United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726-27, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); Revene v. Charles County Comm'rs, 882 F.2d 870, 875 (4th Cir.1989). Therefore, the undersigned recommends that the district judge decline to retain jurisdiction over Plaintiff's state law causes of action.

**V.     CONCLUSION**

For the reasons set forth above, it is recommended that summary judgment be granted as to Plaintiff's § 1983 claim, and that the Court decline to exercise jurisdiction over Plaintiff's state law causes of action.

 s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

July 1, 2008
Florence, South Carolina

**The parties' attention is directed to the important notice on the next page.**

-11-